UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK M. OLIVER, JR., | No. 2:16-cv-01846 CKD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

<u>BACKGROUND</u>

Plaintiff, born February 19, 1978, applied on July 13, 2012 for SSI, alleging disability beginning March 1, 2012. Administrative Transcript ("AT") 153-163. Plaintiff alleged he was unable to work due to depression and anxiety. AT 92. In a decision dated December 15, 2014,

////

////

1

the ALJ determined that plaintiff was not disabled.[1] AT 31-42. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since June 28, 2012, the application date.
>
> 2. The claimant has the following severe impairments: left arm pain likely secondary to past laceration with likely nerve damage status post-surgical repair, mood disorder, and cannabis dependence.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

finds that the claimant has the residual functional capacity to perform medium work, except he is limited to simple unskilled jobs with only occasional public and fellow employee contact.

5. The claimant has no past relevant work.

6. The claimant was born on February 19, 1978 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 28, 2012, the date the application was filed.

AT 33-42.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical evidence; (2) the ALJ improperly discredited the lay evidence, consisting of plaintiff's and his wife's testimony; and (3) the ALJ was required to obtain Vocational Expert testimony rather than relying on the grids.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

Plaintiff asserts that the ALJ failed to give legally adequate reasons for rejecting the opinion of Dr. Richard Hicks, a psychiatrist who in August 2013 performed a comprehensive psychiatric evaluation of plaintiff at the request of the state agency. See AT 299-302.

At the outset of his report, Dr. Hicks noted that there were no medical records available. AT 299. Based on his interview and evaluation of plaintiff, Dr. Hicks diagnosed him with depressive disorder and anger control disorder at Axis I, possible bipolar disorder at Axis II, and a GAF of 55-60.[2] AT 301. In his functional assessment, Dr. Hicks stated that plaintiff would have difficulty "interacting with coworkers and the public" and "being consistent and regular." AT 301.

> He would have difficulty doing regular work activities. He could easily lose his temper and get into a fight on the job. He needs a protective environment for work like a thrift store or something where there is an allowance for the psychiatric issues of the person

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).

4

|   |   |
|---|---|
| 1 | working there. |
| 2 | AT 301. |

In determining residual functional capacity (RFC), the ALJ found that plaintiff's allegations were "not entirely credible." AT 40. The ALJ next noted that these allegations were consistent with Dr. Hicks's report, which he summarized. AT 40. The ALJ then discounted Dr. Hicks's functional assessment, reasoning:

> The undersigned gives this opinion little weight as it is not supported by the medical record. The record lacks longitudinal evidence to support these limitations. Furthermore, this opinion appears based upon the claimant's subjective complaints as Dr. Hicks reported that there were no medical records available. Furthermore, the record reveals that the claimant had not received recent mental health treatment.

AT 40.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

5

rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff argues that the ALJ failed to give specific and legitimate reasons for discounting the opinion of examining psychiatrist Dr. Hicks. (ECF No. 15 at 9.) Plaintiff asserts that the ALJ's basis for rejecting Dr. Hicks's opinion "boils down to Plaintiff's lack of consistent psychiatric treatment, which is contrary to established Ninth Circuit law" in Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996), which held that the ALJ erroneously rejected an examining psychologist's opinion based on a lack of mental health treatment records. In Nguyen, the court reasoned that

> depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. . . . Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate. . . . "[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"

100 F.3d at 1465, quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989). But see Acosta v. Berryhill, 2017 WL 1090160, *5 (E.D. Cal. March 22, 2017) (no error under Nguyen where "plaintiff has not cited any evidence suggesting that he was unaware of his potential mental illness or that his failure to secure mental health treatment was attributable to his mental illness rather than his own preference.").

Defendant argues that, rather than being based on a mere lack of records, the ALJ's rejection of Dr. Hicks's opinion was based on a consideration of the record as a whole, which showed that plaintiff's mental symptoms "were generally mild." AT 37. Citing Dr. Hicks's report and other medical records, the ALJ elaborated:

> Mental status examinations revealed that the claimant was fully oriented. . . . He was cooperative. His thought process was logical and linear. His thought content was normal. His attention and concentration was normal. His recent and remote memory was intact. His fund of knowledge was age appropriate. He had fair

> impulse control, insight, and judgment. He denied perceptual symptoms. . . . There was no history of hallucinations, illusions, depersonalization, or derealization.

AT 38. The ALJ also considered evidence that both plaintiff and his wife reported that Prozac helped plaintiff, and he was more "calm and stable" on the medication. AT 38. Thus, defendant argues, the ALJ reasonably rejected Dr. Hicks's conclusions about functional limitations as inconsistent with the objective evidence. As to the ALJ's reasoning that Dr. Hicks's report was based on plaintiff's subjective complaints, the ALJ reasonably found plaintiff not entirely credible, as discussed below. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible).

Considering the record as a whole and the reasoning of the ALJ, the court finds that the ALJ did not err in discounting the functional limitations assessed by Dr. Hicks.

B. Lay Evidence

Plaintiff next contends that the ALJ gave inadequate reasons for finding the testimony of plaintiff and his wife not credible in determining RFC.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

      At step four, the ALJ discussed the issue of plaintiff's credibility, in light of the overall record, at length.  AT 36-40.  After reciting plaintiff's allegations, the ALJ concluded that his statements about intensity, persistence, and limiting effects of these symptoms were not entirely credible for reasons explained below.  AT 36-37.

      First, "these allegations are inconsistent with the claimant's discussed clinical history showing that the claimant's condition is controlled."  AT 37, citing, e.g., AT 299 (plaintiff's report to Dr. Hicks that Prozac helped keep him calm and stable).  See Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits).

      The ALJ cited some of plaintiff's reported daily activities – including dressing himself, doing the dishes, mopping, sweeping, going shopping, fishing, and riding his bike – as consistent with his clinical history.  AT 37.  See Burch, 400 F.3d at 681 (ALJ may consider daily living activities in credibility analysis).  The ALJ further noted that "findings on physical and mental status examination were generally mild."  AT 37.  He noted that plaintiff's arm pain was treated with over-the-counter medication.  AT 37.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

8

(evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment).

"Second, [plaintiff's] allegations are inconsistent with medical opinions that show that the claimant is functional in spite of his condition." AT 38, citing, e.g., AT 78-90 (opinion of state agency psychologist that plaintiff had moderate limitations but was not psychologically incapable of working or interacting with others). As discussed above, the court found no error in the ALJ's weighing of medical opinions.

Additionally, the ALJ found that plaintiff's "general credibility is questionable as the record reveals inconsistencies." AT 39. Plaintiff takes issue with this portion of the decision, which concerns (1) plaintiff's failure to appear at a rescheduled consultative examination, (2) plaintiff's conflicting reports about how many grades of school he attended, and (3) plaintiff's conflicting reports as to how often he smoked marijuana. AT 39. Plaintiff contends these are inadequate reasons to find plaintiff not credible. However, these relatively minor factors are merely one part of the ALJ's discussion of credibility.

Turning to the third-party report of plaintiff's wife, Ms. Oliver, the ALJ found her statements were inconsistent with plaintiff's medical history and record exhibits. AT 39-40; see AT 187-195. "The severe limitations described by them are simply not borne out by the record from treating sources and consultative examinations." AT 40. The ALJ further stated that Ms. Oliver's statement could not be considered unbiased, as she "lived with the claimant and is likely to agree with the claimant's alleged symptoms and limitations." AT 40. "Where the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's testimony." Lee v. Astrue, 2010 WL 5662964, *8 (D. Or. Oct. 27, 2010), citing Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

In light of the medical record and evidence of plaintiff's daily activities, discussed above, the undersigned concludes that the ALJ used the proper process and provided proper reasons in finding plaintiff and his wife not entirely credible about the limiting effects of his symptoms.

////

////

C. <u>Vocational Expert</u>

Lastly, plaintiff claims the ALJ was required to have a vocational expert (VE) testify at step five. Specifically, plaintiff contends that, while plaintiff's RFC specified that he was limited to "only occasional public and fellow employee contact" (AT 36), the ALJ failed to obtain VE testimony on the impact of these limitations on his ability to perform otherwise suitable jobs.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); see also <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990), <u>overruled on other grounds</u>, <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991); <u>Polny v. Bowen</u>, 864 F.2d 661, 663-64 (9th Cir. 1988); see also <u>Odle v. Heckler</u>, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

"The ALJ can use the [G]rids without vocational expert testimony when a non-exertional limitation is alleged because the [G]rids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the [G]rids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations and quotation marks omitted). In such instances, the testimony of a

vocational expert is required.

In his decision, the ALJ discussed Hoopai, 499 F.3d 1071, in which the Ninth Circuit held that a claimant's depression was "not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert." AT 39. Having reviewed the record, the ALJ found that "although the residual functional capacity dictates that the claimant can have occasional public or fellow employee contact, this does not qualify as a substantial loss of ability to meet the basic requirement of being able to respond appropriately to supervision and coworkers." AT 41-42. The ALJ further found that plaintiff's limitations on contact "have little or no effect on the occupational base of unskilled medium work." AT 41. See Garcia v. Comm'r of Soc. Sec., 587 Appx 367 (9th Cir. 2014) (unpublished) (ALJ properly declined to call a vocational expert where claimant's non-exertional limitations, including a "limited capacity to work with others," "did not significantly erode the base of unskilled light work with limited or no public contact for which [claimant] was otherwise qualified.").

Here, the ALJ properly considered plaintiff's limitations in determining whether the unskilled medium work base was eroded and concluded, consistent with applicable law, that it was not. The court finds no error in the ALJ's reliance on the grids.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 13, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 oliver1846.ssi.ckd

11